ORAL ARGUMENT NOT YET SCHEDULED
Nos. 26-7123, 26-7049, 26-7052

———————————

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

BARBARA J. LEE, ET AL.,

*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, ET AL.,

*Defendants-Appellants*,

———————————

On Appeal from the United States District Court
for the District of Columbia, 1:21-cv-00400-APM

———————————

# OPPOSITION TO EMERGENCY MOTION FOR A STAY
# PENDING APPEAL

———————————

Edward G. Caspar
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street N.W., Suite 900
Washington, DC 20005
Tel: 202-662-8600
ecaspar@lawyerscommittee.org

Faith E. Gay
Joshua S. Margolin
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
fgay@selendygay.com
jmargolin@selendygay.com

*Attorneys for Appellees Conrad Smith, Danny McElroy, Governor Latson,
Melissa Marshall, Michael Fortune, Jason DeRoche, Reginald Cleveland*

[*Additional Counsel Listed On Inside Cover*]

Marc P. Epstein
Jeffrey Blumberg
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street N.W., Suite 900
Washington, DC 20005
Tel: 202-662-8600
mepstein@lawyerscommittee.org
jblumberg@lawyerscommittee.org

Babak Ghafarzade
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
bghafarzade@selendygay.com

William J. Blechman
Elizabeth B. Honkonen
SPERLING KENNY NACHWALTER
Four Seasons Tower – Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Tel: 305-373-1000
wblechman@sperlingkenny.com

*Attorneys for Appellees Conrad Smith, Danny McElroy, Governor Latson, Melissa Marshall, Michael Fortune, Jason DeRoche, Reginald Cleveland*

i

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................... 1

STATEMENT OF THE CASE ................................................................. 3

I.    Factual Background. ....................................................................... 3

II.   Procedural History. ........................................................................ 4

STANDARD OF REVIEW ...................................................................... 5

ARGUMENT .............................................................................................. 6

I.    No automatic stay applies during an immunity appeal. ................. 7

II.   The District Court did not abuse its discretion in holding that aspects of *Smith* are not involved in the appeals. ................................. 10

　　A.    *Smith* has proceeded for years against non-Trump defendants, without prejudice to Trump. ............................................................. 11

　　B.    Trump has not participated in the District Court proceedings he now claims require his participation. ............................................ 13

　　C.    This Court should disregard speculation about hypothetical scenarios. .......................................................................................... 15

　　D.    Aspects of the case will proceed regardless of the result of Trump's immunity appeal. ............................................................... 17

III.  Trump fails to show a stay is appropriate. ..................................... 19

　　A.    Trump has not shown a strong likelihood of success on the merits. ............................................................................................... 20

　　B.    Trump cannot show irreparable harm. ...................................... 22

　　C.    A stay will substantially injure plaintiffs. .............................. 23

　　D.    A stay is contrary to the public interest. ................................. 25

CONCLUSION ........................................................................................ 26

CERTIFICATE OF COMPLIANCE ..................................................... 28

CERTIFICATE OF SERVICE ............................................................... 29

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## Cases

*Alice L. v. Dusek*,
  492 F.3d 563 (5th Cir. 2007)..........................................................7, 19

*Apostol v. Gallion*,
  870 F.2d 1335 (7th Cir. 1989)...............................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................7, 9

*Aska v. United States*,
  2024 WL 6864047 (N.D. Ill. June 21, 2024).......................................19

*United States ex rel. Barko v. Halliburton Co.*,
  4 F. Supp. 3d 162 (D.D.C. 2014)..........................................................25

*Bethlehem Manor Vill., LLC v. City of Bethlehem*,
  2024 WL 6975768 (E.D. Pa. Nov. 20, 2024).......................................19

*Chuman v. Wright*,
  960 F.2d 104 (9th Cir. 1992)..................................................................8

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736 (2023).........................................................................7, 8

*Crawford-El v. Britton*,
  523 U.S. 574 (1998)...............................................................................19

*Dunlap v. Presidential Advisory Comm'n on Election
  Integrity*, 319 F. Supp. 3d 70 (D.D.C. 2018)......................................21

*Feibush v. Johnson*,
  280 F. Supp. 3d 663 (E.D. Pa. 2017) ..............................................9, 19

*\*In re Flint Water Cases*,
  960 F.3d 820 (6th Cir. 2020)..............................................7, 15, 17, 19

*Friends of the Cap. Crescent Trail v. Fed. Transit Admin.*,
  263 F. Supp. 3d 144 (D.D.C. 2017).......................................................6

*Griggs v. Provident Consumer Discount Co.*,
  459 U.S. 56 (1982).........................................................................1, 7

iii

*Horn v. Huddle*,
　647 F. Supp. 2d 66 (D.D.C. 2009) ..................................................... 24

*Jicarilla Apache Nation v. United States*,
　91 Fed. Cl. 489 (Fed. Cl. 2010) ....................................................... 24

*John Doe Co. v. Consumer Fin. Prot. Bureau*,
　849 F.3d 1129 (D.C. Cir. 2017) .......................................................... 6

*Jones v. Clinton*,
　72 F.3d 1354 (8th Cir. 1996) ............................................................ 23

*\*KalshiEX LLC v. Commodity Futures Trading Comm'n*,
　119 F.4th 62 (D.C. Cir. 2024) .................................................... 20, 25

*Landis v. N. Am. Co.*,
　299 U.S. 248 (1936) .......................................................................... 10

*Lightfoot v. Walker*,
　797 F.2d 505 (7th Cir. 1986) .............................................................. 5

*Lugo v. Alvarado*,
　819 F.2d 5 (1st Cir. 1987) ....................................................... 7, 15, 19

*\*Nken v. Holder*,
　556 U.S. 418 (2009) ..................................................................... 6, 20

*Open Top Sightseeing USA v. Mr. Sightseeing, LLC*,
　48 F. Supp. 3d 87 (D.D.C. 2014) ................................................. 10, 22

*Population Inst. v. McPherson*,
　797 F.2d 1062 (D.C. Cir. 1986) ...................................................... 21

*Princz v. Fed. Repub. of Germany*,
　998 F.2d 1 (1993) ............................................................................... 9

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
　286 F.R.D. 88 (D.D.C. 2012) ........................................................... 25

*Rhoten v. Stroman*,
　2020 WL 3545661 (W.D. Tex. June 30, 2020) ................................... 9

*Steele v. United States*,
　287 F. Supp. 3d 1 (D.D.C. 2017) ....................................................... 6

*Stewart v. Donges*,
　915 F.2d 572 (10th Cir. 1990) ........................................................... 9

iv

*Trump v. BBC*,
    1:25-cv-25894 (S.D. Fla.).............................................................................. 26

*United States v. Rhodes, III*,
    No. 22-cr-15 (D.D.C. Nov. 29, 2022).............................................................. 24

*United States v. Trump*,
    706 F. Supp. 3d 91 (D.D.C. 2023)................................................................... 9

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
    559 F.2d 841 (D.C. Cir. 1977)........................................................................ 6

*Wisconsin Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985)...................................................................... 15

*Yates v. Cleveland*,
    941 F.2d 444 (6th Cir. 1991).......................................................................... 8

## INTRODUCTION

The *Smith* case has been pending for nearly half a decade. While Defendant Donald J. Trump has invoked presidential immunity to avoid all merits discovery during this time, discovery against other defendants and numerous third parties has steadily proceeded. Trump has now appealed the District Court's most recent rejection of his claim of immunity. While that appeal is pending, the District Court declined to halt *Smith* in its entirety, allowing the discovery against other defendants and third parties that has been ongoing for 3.5 years to continue, while continuing to stay discovery against Trump. Trump asks this Court for "emergency" relief, seeking to stay litigation in *Smith*, not just discovery against him or discovery altogether, but even resolution of pending motions that have nothing to do with his claim of immunity. Trump's motion fails for three independent reasons.

*First*, an appeal only divests a district court of control "over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). As the District Court held, there are aspects of *Smith* that are not "involved in" the immunity issue on appeal. *Smith* is a multi-defendant, multi-claim action resting on

1

conspiracy, aiding and abetting, and assault claims that would proceed to trial against the other defendants even if Trump were granted immunity and excised from the case. In arguing for an automatic stay, Trump urges this Court to expand Supreme Court precedent. This Court should decline to do so.

*Second*, Trump's own conduct in *Smith* refutes his claim that continued discovery will irreparably harm him and that all aspects of this case are involved in his appeal. For years, Trump stood by as document discovery proceeded against other defendants and non-parties—never seeking a protective order, and never suggesting that specific discovery impaired his claimed immunity. His sudden assertion that a continuation of discovery—indeed, anything short of a total stay of *Smith*—threatens irreparable injury cannot be credited.

*Third*, because no automatic stay is warranted, Trump was required, but failed, to show a discretionary stay of all proceedings in *Smith* is warranted. All four stay factors weigh decisively *against* a stay.

The Court should deny Trump's "emergency" motion for a stay pending appeal.

## STATEMENT OF THE CASE

### I.     Factual Background.

*Smith* is the largest of eight consolidated cases that arise from the attack on the United States Capitol on January 6, 2021. *Smith* involves seven plaintiffs and many active defendants, including not just Trump, but also Trump for President, Inc. and Make America Great Again PAC (collectively, "Campaign Defendants"), and multiple individual defendants.

The *Smith* plaintiffs assert a Section 1985 claim alleging several agreements between different defendants, including that non-Trump defendants "planned and coordinated among themselves and with others to … violently attack the United States Capitol and the law enforcement officers defending it" following Trump's calls to action. Dkt. 89 ("Compl.") ¶6.[1] The *Smith* complaint alleges multiple independent agreements among these non-Trump defendants, which Trump is not alleged to have participated in. *See id.* ¶170(b)-(i). The *Smith* plaintiffs also assert battery and assault claims, alleging that non-Trump defendants attacked plaintiffs. *See, e.g., id.* ¶¶125-28, 134.

---

[1] All docket cites are to the *Smith v. Trump*, No. 21-cv-400 (D.D.C.).

## II.    Procedural History.

*Smith* has been pending since August 2021.  In January 2023, the District Court stayed discovery against Trump only.  Dkt. 180.  The District Court explained that, "if discovery directed at other [non-Trump] Defendants does somehow demand the time and attention of [Trump] himself, while his immunity claim remains unresolved, he can seek a protective order at that time." *Id.* at 2.

### A.  Discovery Proceeded for Years Without Trump's Participation or Objection.

Since January 2023, plaintiffs and non-Trump defendants have engaged in discovery.  Plaintiffs and other defendants, including the Campaign Defendants, have propounded and produced discovery and sought discovery from third parties. *Id.* ¶¶4-5.  Depositions were stayed in May 2025, and only a small number have occurred. *Lee v. Trump*, No. 21-cv-400 (D.D.C.) ("*Lee*"), Dkt. 106.

During the 3.5 years that this discovery has been ongoing, Trump has never argued that it impinged upon purported presidential immunity.  Nor has he involved himself in the many discovery issues below, such as privilege disputes with the Campaign Defendants, other

4

defendants' efforts to lift default judgments, and executive privilege assertions by the National Archives and Records Administration ("NARA"). *See, e.g.*, Dkt. 418, 479, 499.

On March 31, 2026, the District Court largely denied Trump's motion for summary judgment on immunity and rejected the Government's Westfall Act substitution. *Lee*, Dkt. 219. Trump and the Government appealed that order and moved the District Court to stay the consolidated cases pending the appeals. *Lee*, Dkt. 220, 224, 226, 229. On June 4, 2026, the District Court stayed all of the consolidated cases except *Smith*, staying discovery as to Trump but permitting other discovery to continue. *Lee*, Dkt. 242 ("Stay Order").

Twelve days later, on June 16, 2026, Trump filed this "Emergency Motion," again seeking to stay all of *Smith* pending appeal. On June 17, 2026, the Government filed a supporting amicus brief.

## STANDARD OF REVIEW

Trump's motion is "in effect an appeal from the district judge's denial of the stay," and so the District Court's ruling must be given "the appropriate deference." *Lightfoot v. Walker*, 797 F.2d 505, 507 (7th Cir. 1986). The decision whether to stay proceedings pending appeal is

"entrusted to the [district] [c]ourt's discretion," *Friends of the Cap. Crescent Trail v. Fed. Transit Admin.*, 263 F. Supp. 3d 144, 147 (D.D.C. 2017) (citing *Nken v. Holder*, 556 U.S. 418, 433-34 (2009)), because a stay is "an extraordinary remedy that constitutes an intrusion into the ordinary process of judicial review," *Steele v. United States*, 287 F. Supp. 3d 1, 3 (D.D.C. 2017) (cleaned up).  As a result, the abuse of discretion standard applies when evaluating whether to stay district court proceedings over the district court's denial of an identical motion.  *See, e.g.*, *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 845 (D.C. Cir. 1977); *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (citing *Holiday Tours*).

## ARGUMENT

Trump must justify his extraordinary request by either establishing that the appeals automatically divested the District Court of jurisdiction over the entire *Smith* case, or that the discretionary stay factors warrant a stay.  Trump has not and cannot meet his burden for three reasons.  *First*, there is no automatic stay of all lower court proceedings when the immunity of one defendant in a multi-defendant case is up on appeal.  *Second*, the District Court did not abuse its

6

discretion in finding that there are aspects of *Smith* not involved in the pending appeal. *Third*, Trump has failed to satisfy the four-factor discretionary standard governing motions to stay; each factor weighs against him.

## I. No automatic stay applies during an immunity appeal.

Trump argues that anytime a defendant in a multi-defendant case appeals an immunity issue, the lower court is automatically divested of jurisdiction over the entire case, relying on *Griggs*, *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). But Trump overstates the reach of those cases.

*Griggs* noted that an appeal "divests the district court of its control *over those aspects of the case involved in the appeal*." 459 U.S. at 58 (emphasis added). *Griggs* does not mandate staying the entire case if portions of it are not involved in an appeal. Stay Order at 6. Courts thus routinely allow discovery against non-immune defendants while another defendant's immunity is on appeal. *See, e.g.*, *Lugo v. Alvarado*, 819 F.2d 5, 7 (1st Cir. 1987); *Alice L. v. Dusek*, 492 F.3d 563, 564-65 (5th Cir. 2007); *In re Flint Water Cases*, 960 F.3d 820, 826-29 (6th Cir. 2020).

*Coinbase* does not help Trump. Stay Order at 6-7. *Coinbase* narrowly held that district court proceedings must be stayed when the arbitrability of the case is on appeal. 599 U.S. at 740. When that happens, "the entire case is essentially 'involved in the appeal,'" because the issue "is whether the case belongs in arbitration or instead in the district court." *Id.* at 740-41. If the appellate court held that arbitration was proper, *no part* of the case could proceed. *Id.* at 741-43. The same is not true here: *even if* the appeals are resolved against plaintiffs, the *Smith* case will proceed against the non-immune defendants. *See infra* Section I.D.

Trump and the Government make much of *Coinbase*'s nonbinding dicta mentioning stay principles in qualified immunity cases. Mot. at 12; Gov. Br. Section I. But the import of that dicta can only be ascertained by analyzing its cited cases. *Coinbase*, 599 U.S. at 742 & n.4. In each of them, the immunity appeal could have resolved the entire case, so the entire case was "involved in" the appeal. *Chuman v. Wright*, 960 F.2d 104, 104-05 (9th Cir. 1992); *Yates v. Cleveland*, 941 F.2d 444, 446 (6th Cir. 1991); *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir. 1989);

8

*Stewart v. Donges*, 915 F.2d 572, 575-76 (10th Cir. 1990).[2]  That is not true here.  *See infra* Section I.D.

Trump and the Government also misread *Iqbal*.  Mot. 13-14; Gov. Br. at 19-20.  *Iqbal* addressed whether relaxed pleading standards could be justified by the promise of minimally intrusive discovery.  Stay Order at 7.  "*Iqbal* does not stand for the idea that *all discovery* for *all defendants* must be stayed while waiting for resolution of qualified immunity."  *Rhoten v. Stroman*, 2020 WL 3545661, at \*2 (W.D. Tex. June 30, 2020); *see also, e.g.*, Stay Order at 7; *Feibush v. Johnson*, 280 F. Supp. 3d 663, 665-66 (E.D. Pa. 2017).

The District Court thus correctly held it was not divested of jurisdiction over aspects of the case not on appeal.  Neither Trump nor the Government point to any case that holds otherwise.  Instead, they cite only district court cases that exercised their discretion to stay proceedings against non-immune defendants, Mot. 14 & n.2, a choice

---

[2] The same is true of Trump's cited cases.  *See, e.g.*, *Princz v. Fed. Repub. of Germany*, 998 F.2d 1 (D.C. Cir. 1993); *United States v. Trump*, 706 F. Supp. 3d 91 (D.D.C. 2023).  In *Trump*, the district court "[did] not understand the required stay … to divest it of jurisdiction" as to aspects of the case not on appeal, like enforcement of prior orders.  706 F. Supp. 3d at 93.

appropriately left to the sole discretion of the District Court, *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

## II.     The District Court did not abuse its discretion in holding that aspects of *Smith* are not involved in the appeals.

Trump argues that, because *any* proceeding in *Smith* will impact his immunity interests, *all* aspects of *Smith* are involved in his appeal. He is wrong.  For nearly 3.5 years, discovery as to non-Trump defendants has proceeded without any participation from Trump or argument that specific discovery prejudiced his immunity interests.  In fact, Trump did not file a similar motion when he appealed the denial of his motion to dismiss based on immunity, Dkt. 180; Dkt. 181; *Smith v. Trump*, No. 23-7010 (D.C. Cir.), and thus waived the argument here.  *Cf. Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014) ("[a]n unexcused delay" in seeking relief "implies a lack of urgency and irreparable harm").  Further, Trump's four examples of case proceedings only underscore that the case has been and can continue proceeding without issue.  Trump's longstanding acquiescence to ongoing discovery demonstrates that there are aspects of *Smith* not involved in the immunity appeal.

Trump and the Government raise two responses: (1) hypothetical scenarios in which discovery could require Trump's participation, and (2) a claim that Trump is "at the center of the case." Mot. at 10, 15-16. But hypotheticals cannot carry the day, and even if credited, they do not prove that all of *Smith* is involved in the pending appeals. And the effort to rewrite the *Smith* complaint to make Trump the single, necessary defendant fails.

### A.    *Smith* has proceeded for years against non-Trump defendants, without prejudice to Trump.

Trump and the Government argue that, absent a stay, Trump will be "force[d]" into a "Catch-22" of "surrendering the litigation-burden immunity he is appealing to protect, or standing aside while Plaintiffs develop a record against him." Mot. at 18; *see also* Gov. Br. at 14. But Trump's lack of participation in, or claim of prejudice from, the past 3.5 years of proceedings proves this argument is baseless.

To start, there have been significant case developments in *Smith* since discovery was first stayed against Trump. Nine defendants have answered the complaint. *See* Caspar Decl. ¶3. Twelve have defaulted, some of whom have moved to set aside those defaults. *See, e.g.*, Dkt. 231-38, 386, 474, 479, 489. Those default motions have either been decided

or are fully briefed and pending below. *See, e.g.*, Dkt. 386, 399, 402, 445, 479, 488. The District Court denied Defendant Rehl's motion for summary judgment. Dkt. 250. Trump did not participate in any of those developments and has never claimed they caused him prejudice.

Discovery has also begun, with non-Trump parties propounding and producing discovery and seeking discovery from non-parties. Despite having years to do so, Trump has not objected to specific discovery, sought a protective order to limit it, or otherwise claimed discovery infringed on his "interests" in immunity.[3] *But see* Dkt. 225, 239. Nor did Trump seek an appellate stay of District Court proceedings when his prior appeal of the denial of his motion to dismiss on immunity was pending. Dkt. 180, 181; *Smith v. Trump*, No. 23-7010 (D.C. Cir.). His new argument that any discovery will necessarily cause Trump irreparable prejudice is simply not credible.

---

[3] In 2024, Trump moved to stay the consolidated cases given a pending criminal case against him, but did not argue that discovery impacted his immunity interests. *Lee*, Dkt. 90.

### B. Trump has not participated in the District Court proceedings he now claims require his participation.

Trump points to four examples of District Court proceedings that he claims threaten his immunity interests if *Smith* is not stayed. *See* Mot. at 21-23.[4]  But the fact that Trump has not participated in or protested against any of those proceedings, despite ample opportunity to do so, demonstrates his fears are unfounded.

*First*, Trump says a pending privilege dispute with the Campaign Defendants "is central to Plaintiffs' theory of [his] liability" and must be stayed.  Mot. at 21.  But this dispute has been fully briefed and pending for almost a year, *see* Dkt. 430, and does not "bear even remotely on official-acts immunity," Stay Order at 6.  Trump never sought to involve himself in it before.

*Second*, Trump says discovery plaintiffs seek from NARA demonstrates the need for a stay.  Mot. at 22.  But plaintiffs have been

---

[4] The District Court used three of these proceedings as examples of "aspects of *Smith* that are not involved in the appeal."  Stay Order at 6. Trump faults the District Court for only providing three examples.  *See* Mot. at 20-22.  But the District Court was not required to provide a comprehensive list.  *Any* aspect of the case that is not involved in the appeal would mandate a denial of Trump's motion to stay the entire case.

pursuing that discovery for over two years and are reviewing a privilege log produced by NARA, all without concern from Trump that his immunity interests are being violated. *See* Dkt. 499 at 9.

*Third*, Trump claims plaintiffs' attempts to obtain mail records of non-party Roger Stone infringes on his immunity interests. *Id.* at 23. But those efforts are merely a continuance of plaintiffs' efforts to seek discovery from Stone beginning *almost three years ago*, including documents relating to Trump and other defendants. Caspar Decl. ¶5. Trump never objected to that discovery before.

*Fourth*, Trump challenges the District Court's finding that Defendants Nordean and Biggs' efforts to lift the defaults entered against them are not involved in the pending appeals. Mot. at 21-22. But those efforts have been ongoing for over three months, *see* Dkt. 479, with no involvement by or objection from Trump. While Trump admits those proceedings "show that some non-discovery activity in *Smith* might proceed without" burdening him, he simultaneously seeks to stay "*all proceedings*" in *Smith*, including default proceedings. Mot. at 28.

Trump's four examples prove that *Smith* can in fact proceed without his participation or prejudice to him, as it has for years.

14

**C.    This Court should disregard speculation about hypothetical scenarios.**

As the District Court explained, if Trump believes that discovery strays into matters that would impair his rights, he is free to seek a protective order. Stay Order at 8-9. Indeed, other courts have found protective orders to be a sufficient safeguard. *See, e.g.*, *Flint*, 960 F.3d at 828; *Lugo*, 819 F.2d at 6.

In response, Trump imagines having to spend "*potentially* millions of dollars in attorney fees" monitoring the case and seeking protective orders. Mot. at 23 (emphasis added). But Trump's hypothetical, disproven by history and unsupported by concrete examples, cannot carry the day. *See Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674-76 (D.C. Cir. 1985) (denying motions for stay premised on "unsubstantiated and speculative allegations"); *Flint*, 960 F.3d at 828 (disregarding "hypothetical horrors"). Again, Trump has not sought any protective orders during the last 3.5 years of discovery or complained about having to monitor discovery. *See supra* Section II.B.

In an attempt to distinguish the past several years of discovery, the Government claims that plaintiffs "intend to go on a fishing expedition to build a record against" Trump. Gov. Br. at 10. This speculation is

15

incorrect. Trump has never argued that plaintiffs' merits discovery requests are overbroad or sought to quash any third-party subpoenas. And while plaintiffs may need to take 600 hours of deposition testimony, *Lee*, Dkt. 230 at 4, that estimate is for the *entirety* of the case, including discovery that plaintiffs will not seek to conduct while the appeals are pending. In any event, plaintiffs intend to continue proceeding with tailored discovery that does not involve aspects of the case on appeal.

In support of its "fishing expedition" argument, the Government tellingly identifies *just three* potential deponents—"[Trump's] former Chief of Staff, his daughter, and his son-in-law"—whom it claims plaintiffs "are now preparing to depose" in order to "target[]" Trump's interests. Gov. Br. at 3, 12. But plaintiffs noticed those depositions over a year ago and have not attempted to schedule them following a May 2025 order staying depositions. Caspar Decl. ¶6; Dkt. 393. That three depositions might take place later, including after the appeals are resolved, does not suggest that all aspects of *Smith* are involved in those appeals. In any event, if those depositions proceed, Trump may seek a protective order as he sees fit. And while the Government further postulates that plaintiffs seek "wide-ranging and intrusive depositions,"

16

*id.* at 21, neither Trump nor the Government have raised any concrete objections to those depositions.

Finally, Trump frets that protective orders are an inadequate remedy because they "cannot solve the problem after the fact."  Mot. at 24.  But protective orders can be, and often are, filed *before* discovery is received.  For this reason, protective orders have been used in lieu of a full stay where only one defendant in a multi-defendant case is pursuing immunity on appeal.  *Flint*, 960 F.3d at 828.

**D.    Aspects of the case will proceed regardless of the result of Trump's immunity appeal.**

Trump and the Government also argue that *Smith* must be stayed because it is "entirely about President Trump's liability for the events of January 6."  Gov. Br. at 21; Mot. at 19.  But *Smith* is about far more than Trump's liability and would proceed even if Trump were excised from the case.  *Smith* is a multi-defendant, multi-claim case, including claims that the non-Trump defendants agreed with parties other than Trump to prevent certification of the 2020 election, including by threatening, intimidating, and using violence against plaintiffs.

The *Smith* plaintiffs' claims involve theories of liability that draw on the existence of separate agreements between defendants, many of

which do *not* involve an agreement by Trump. Regardless of whether Trump remains a defendant, plaintiffs will still need discovery into each of the other defendants' own conduct. Factual questions like what unlawful conduct each defendant engaged in and against which plaintiffs, Compl. ¶200; what threats were made by each defendant and against which plaintiffs, Compl. ¶206; and what duty was owed and breached by each defendant that caused the plaintiffs harm, Compl. ¶212, must be answered through discovery. None are involved in Trump's immunity appeal.

Trump and the Government also suggest (wrongly) that because some claims seek to establish vicarious liability against Trump and co-conspirator statements may be attributable to him, the claims are necessarily intertwined. Mot. at 19-20; Gov. Br. at 2, 16. But proving that claims are intertwined is not the test and, regardless, does not establish that those claims are involved in the immunity appeal. In any event, the mere *possibility* that evidence might someday be offered against Trump does not transform all discovery in a multi-defendant case into an aspect of the case "involved in the appeal" that relates to Trump only. If it did, no multi-defendant conspiracy case could ever proceed

18

against non-immune defendants while an immunity appeal is pending, but courts routinely allow exactly that.  *See, e.g.*, *Aska v. United States*, 2024 WL 6864047, at \*2 (N.D. Ill. June 21, 2024); *Bethlehem Manor Vill., LLC v. City of Bethlehem*, 2024 WL 6975768, at \*2 (E.D. Pa. Nov. 20, 2024); *Lugo*, 819 F.2d at 7; *Alice L.*, 492 F.3d at 564-65; *Flint*, 960 F.3d at 826.  And here, many witnesses will be relevant only to the claims against the non-Trump defendants.  To the extent some may relate to multiple claims in the case, including those against Trump, Trump can protect his "interests" in any number of ways, including by seeking a protective order, moving to reopen depositions as needed after the appeals are resolved, or by having his attorneys (some of whom also represent the Campaign Defendants) monitor ongoing discovery.

The District Court was thus correct to find that there are "readily segregable portions" of the litigation.

## III.   Trump fails to show a stay is appropriate.

Because there is no "categorical bar against discovery," the District Court retains "discretion" to allow discovery to proceed.  *Feibush*, 280 F. Supp. 3d at 665-66; *accord Crawford-El v. Britton*, 523 U.S. 574, 593 n.14

(1998). Here, the District Court did not abuse its discretion in declining to indefinitely stay the case as to the non-Trump defendants.

A stay is an "extraordinary" remedy. *KalshiEX LLC v. Commodity Futures Trading Comm'n*, 119 F.4th 62, 63 (D.C. Cir. 2024). It is justified only if the movant (1) makes a "strong showing" of a likelihood of success on the merits, (2) demonstrates it "will be irreparably injured absent a stay," (3) shows a stay would not "substantially injure the other parties," and (4) establishes that a stay is in the public interest. *Nken*, 556 U.S. at 426. All four factors weigh strongly against granting Trump's motion.

## A. Trump has not shown a strong likelihood of success on the merits.

On the first factor, neither Trump nor the Government have attempted to make any showing, let alone a "strong" one, that they will prevail on the merits of their appeals. *Id.* at 426. Nor could they. In its immunity decision, the District Court applied the controlling immunity standards and acknowledged that any "close call[s]" must be "resolved in favor of the President." *Lee*, Dkt. 219 at 7. Even against that backdrop, the court noted that Trump put forward scant evidence to support his motion (in contrast to plaintiffs' "raft" of evidence), and that the only uncontradicted evidence he presented pointed against a finding of

20

immunity. *Id.* at 30. The evidentiary record made clear that "with limited exceptions, President Trump has not carried his burden to demonstrate" he is entitled to immunity. *Id.* at 57. Because the pending appeals will be limited to the District Court record, Trump's likelihood of success on the merits is negligible, and he never argues otherwise.

Instead, Trump argues only that his appeal involves "a serious constitutional question." Mot. at 25-26. But the serious legal question standard replaces the likelihood of success standard "*only* when the other three factors tip sharply in the movant's favor," *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 106 (D.D.C. 2018) (emphasis added), which is not the case here, *see infra* Section III.B-D. In any event, Trump fails to meet the more lenient standard, because he does not "raise[] serious legal questions *going to the merits*" of his claim, as is required. *Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986) (emphasis added); *see* Stay Order at 8. The District Court applied established law governing immunity to the undisputed facts of this case. *See Lee*, Dkt. 219 at 12. Because Trump "puts forth no effort to show how or why the court erred in addressing that question," this factor weighs strongly against imposing a stay of all proceedings.

21

Stay Order at 8.

### B.     Trump cannot show irreparable harm.

Trump also fails to establish irreparable harm will result if the entire case is not stayed.  But discovery against the other defendants has been ongoing for 3.5 years, and "only now, for the first time, does President Trump claim that he would be irreparably harmed absent a complete stay."  Stay Order at 8.  Trump's "decision not to seek a similar stay years ago undercuts his present claim of irreparable harm."  *Id.*; *see also Open Top Sightseeing USA*, 48 F. Supp. 3d at 90 (similar).

Any potential burden to Trump from discovery against his codefendants would at most be "minimal, and in no event will he be subject to the type of 'broad-reaching' discovery that would compromise the protections of official-acts immunity."  Stay Order at 8.  And "if [Trump] believes his substantial rights would be impaired by" any such discovery, he can seek a protective order, despite not having done so for years.  *Id.* at 8-9; *see supra* Section II.A.  While Trump suggests even having to monitor the case or seek protective relief would "compromise[]" his "immunity right," he cites no law supporting that bald assertion.  Mot. at 26.  Regardless, plaintiffs remain prepared to work with Trump in good

faith to address any concerns he may raise, which would minimize, if not eliminate, the need for any protective orders. *See Jones v. Clinton*, 72 F.3d 1354, 1361, n.9, 1363 (8th Cir. 1996) ("[J]udicial case management sensitive to the burdens of the presidency" would avoid the perceived danger.).

The Government's argument that it has a "strong interest" in "vindicating" the "congressional judgment" in the Westfall Act, Gov. Br. at 22, does not demonstrate irreparable harm. The Government fails to explain how allowing discovery to proceed below would undermine that "strong interest." Nor would it. As the District Court held, and the Government does not dispute, the Government "will not take discovery as a party in *Smith*" *regardless* of the appellate outcome. Stay Order at 12.

This factor thus weighs strongly against a blanket stay of *Smith*.

## C.    A stay will substantially injure plaintiffs.

By contrast, and as the District Court held, staying *Smith* in its entirety would greatly prejudice plaintiffs in their years-long efforts to secure justice. Stay Order at 9. Because depositions have been stayed since May 2025, plaintiffs have not been able to secure critical testimony

that is not involved in Trump's pending appeal. It is well established that the "possibility of forever depriving the plaintiff of evidence and testimony" transforms routine delay into substantial harm. *Horn v. Huddle*, 647 F. Supp. 2d 66, 68 (D.D.C. 2009). And the risks of delay here are even more acute, given that, for example, several defendants have been convicted for destroying evidence related to January 6. *United States v. Rhodes, III*, No. 22-cr-15 (D.D.C. Nov. 29, 2022), Dkt. 410 at 6-7. The risk that evidence will be lost and witnesses' memories will fade is thus both real and increasing with each passing day. *Jicarilla Apache Nation v. United States*, 91 Fed. Cl. 489, 495 (Fed. Cl. 2010). Moreover, discovery already has been delayed by the need for repeated court intervention to compel cooperation with discovery by several defendants and third parties. *See, e.g.*, Dkt. 254. Deferring such enforcement efforts until the unrelated immunity issue is resolved will further compromise plaintiffs' rights to develop relevant evidence.

While the District Court previously determined that the public record minimized these risks, Dkt. 180 at 2, that conclusion was reached over *three years ago*. The District Court has since found that the passage of time has changed the stakes. Stay Order at 9 ("[T]he events of January

24

6th are now over five years old. There is a genuine risk that, with extended delay, witnesses' memories will fade or witnesses will be unavailable or more difficult to track down."); *see also United States ex rel. Barko v. Halliburton Co.*, 4 F. Supp. 3d 162, 170 (D.D.C. 2014) (similar). Moreover, the District Court made clear that plaintiffs cannot rely on the public record alone to prove their case. *See Lee*, Dkt. 219 at 23-24 n.6. Plaintiffs' prosecution of this case will thus be substantially harmed if they are not permitted to uncover *admissible* evidence while memories are fresh, and while documents and witnesses are still available. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 286 F.R.D. 88, 93-94 (D.D.C. 2012).

### D.    A stay is contrary to the public interest.

The public interest weighs strongly in favor of permitting plaintiffs to proceed with those aspects of the case that are not implicated in the immunity appeal. After nearly five years of litigation rife with delay and obfuscation, plaintiffs should be permitted to proceed in their case seeking justice for federal officers, sworn to protect members of Congress, who were seriously injured during the January 6 attack. *KalshiEX LLC*, 119 F.4th at 66 ("Ensuring the integrity of elections and avoiding

25

improper interference and misinformation are undoubtedly paramount public interests.").

The fact that Trump is President does not automatically tilt the public interest in his favor, and Trump cites no authority suggesting it does. Indeed, while in office, Trump has personally aggressively pursued discovery elsewhere when it has suited him, thus undermining his assertion that the public has an interest in protecting him from unnecessary litigation burdens. *See, e.g.*, *Trump v. BBC*, 1:25-cv-25894 (S.D. Fla.), Dkt. 24 (Trump's February 2026 opposition to defendants' motion to stay discovery), Dkt. 56 at 8 (noting "sheer volume of discovery requests" from Trump as of May 2026).

Discovery has already been stayed against Trump, and there is no public interest justification for delaying discovery of the other defendants and third parties.

## CONCLUSION

For the foregoing reasons, the Court should deny Trump's emergency motion for a stay of *Smith* pending appeal.

*/s/ Edward G. Caspar*
Edward G. Caspar

26

Marc P. Epstein
Jeffrey Blumberg
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street N.W., Suite 900
Washington, DC 20005
Tel: 202-662-8600
ecaspar@lawyerscommittee.org
mepstein@lawyerscommittee.org
jblumberg@lawyerscommittee.org

Faith E. Gay
Joshua S. Margolin
Babak Ghafarzade
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
fgay@selendygay.com
jmargolin@selendygay.com
bghafarzade@selendygay.com

William J. Blechman
Elizabeth B. Honkonen
SPERLING KENNY NACHWALTER
Four Seasons Tower – Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Tel: 305-373-1000
wblechman@sperlingkenny.com

*Attorneys for Plaintiffs Conrad Smith,
et al.*

27

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that this brief complies with the length limits, type-face, and type-style requirements of Federal Rules of Appellate Procedure 28.1 and D.C. Circuit Rule 28.1(e), as it contains 5,161 words exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), and was prepared in a proportionally spaced typeface using Microsoft Word in 14-point New Century Schoolbook font.

June 26, 2026                              /s/ *Edward G. Caspar*
                                            Edward G. Caspar

28

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 26, 2026, I electronically filed the foregoing document with the Clerk for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

June 26, 2026                              */s/ Edward G. Caspar*
                                           Edward G. Caspar