Nos. 26-7123, 26-7049, 26-7052

# In the United States Court of Appeals
## for the District of Columbia Circuit

————————

BARBARA J. LEE, et al.,
*Plaintiffs-Appellees*

v.

PRESIDENT DONALD J. TRUMP, et al.,
*Defendant-Appellants*

On Appeal from the United States District Court
for the District of Columbia, 1:21-cv-00400-APM

*Consolidated Member Cases: 21-cv-00586 (APM); 21-cv-00858 (APM); 21-cv-02265 (APM); 22-cv-00010 (APM); 22-cv-00011 (APM); 22-cv-00034 (APM); 23-cv-00038 (APM)*

————————

## PRESIDENT DONALD J. TRUMP'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR A STAY PENDING APPEAL

————————

Joshua Halpern
JH LEGAL PLLC
1100 H Street, NW, Suite 840
Washington, D.C. 20005
(610) 405-5531

Caryn G. Schechtman
DLA PIPER LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
(212) 335-4500

Jonathan M. Shaw
DHILLON LAW GROUP, INC.
2121 Eisenhower Ave, Suite 608
Alexandria, Virginia 22314
(703) 574-1206

Jesse R. Binnall
Gerald A. Urbanek, Jr.
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, Virginia 22314
(703) 888-1943

*Counsel for Defendant-Appellant President Donald J. Trump*

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................... 1

ARGUMENT ............................................................................................... 3

    I.      The Stay Is Automatic, So the District Court Had No
           Discretion to Refuse It. ........................................................ 3

    II.     Plaintiffs' Own Theories Make Codefendant Discovery
           Inseparable From the Claims Against the President. ........... 5

    III.    Prior, Improperly Granted Discovery Does Not Defeat the
           President's Right to Avoid Further (and Heavier)
           Litigation Burdens. ............................................................... 9

    IV.    The *Nken* Factors Favor A Discretionary Stay. ................... 13

CONCLUSION ......................................................................................... 14

CERTIFICATE OF COMPLIANCE ....................................................... 17

CERTIFICATE OF SERVICE ................................................................. 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice L. v. Dusek,*
    492 F.3d 563 (5th Cir. 2007) ..................................................................8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................7, 8

*Aska v. United States,*
    2024 WL 6864047 (N.D. Ill. June 21, 2024)..........................................8

*Coinbase, Inc. v. Bielski,*
    599 U.S. 736 (2023) ...............................................................3, 4, 7, 8

*English v. Dyke,*
    23 F.3d 1086 (6th Cir. 1994) ...............................................................12

*Griggs v. Provident Consumer Discount Co.,*
    459 U.S. 56 (1982) ..........................................................................3, 12

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives,*
    14 F.4th 322 (4th Cir. 2021)................................................................12

*In re Flint Water Cases,*
    960 F.3d 820 (6th Cir. 2020) ................................................................8

*John Doe Co. v. CFPB,*
    849 F.3d 1129 (D.C. Cir. 2017)..............................................................4

*Lightfoot v. Walker,*
    797 F.2d 505 (7th Cir. 1986) .................................................................4

*Lugo v. Alvarado,*
    819 F.2d 5 (1st Cir. 1987)......................................................................8

*Meza v. Renaud,*
  9 F.4th 930 (D.C. Cir. 2021) ........................................................................4

*Nken v. Holder,*
  556 U.S. 418 (2009) ...................................................................................13

*Princz v. Federal Republic of Germany,*
  998 F.2d 1 (D.C. Cir. 1993) .........................................................................4

*Smith v. Trump,*
  2023 WL 417952 (D.D.C. Jan. 26, 2023) .....................................................7

*Trump v. United States,*
  603 U.S. 593 (2024) ...................................................................................13

*United States v. Cotton,*
  535 U.S. 625 (2002) ...................................................................................12

*United States v. DeFries,*
  129 F.3d 1293 (D.C. Cir. 1997) ..................................................................12

*United States v. Dorcely,*
  454 F.3d 366 (D.C. Cir. 2006) ......................................................................8

*Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,*
  559 F.2d 841 (D.C. Cir. 1977) ......................................................................4

## INTRODUCTION

Plaintiffs' opposition confirms why a complete stay is necessary. As Plaintiffs concede, the President's immunity appeal divested the district court of jurisdiction to proceed against him. Plaintiffs accept the district court's decision to stay seven of the consolidated actions against the President—including *Lee*, another multi-defendant conspiracy case. Yet, they baselessly insist *Smith* must proceed because the district court permitted limited document discovery in that case.

Plaintiffs' argument misstates the record. President Trump, in 2022, moved to stay all *Smith* discovery, including discovery directed at other parties, because such discovery "would undermine President Trump's absolute immunity." *Smith* ECF No. 154-1 at 5. The limited discovery that followed proceeded *over the President's objection*. By wrongly allowing discovery, the district court imposed the very burden immunity is designed to prevent: forcing the President either to participate in discovery to protect his interests, or to stand aside while Plaintiffs build an adverse record on claims and theories against him.

This Court should not compound that error now. Because discovery has been stayed since May 2025, Plaintiffs have not taken even one of the

100 depositions they say are necessary to develop their false claims against the President and his alleged co-conspirators.[1] The district court's latest order would open those floodgates before this Court—and potentially the Supreme Court—decides whether the President may be subjected to those litigation burdens at all. That violates presidential immunity.

Nor is the discovery Plaintiffs now seek comparable to the limited document discovery previously allowed. Plaintiffs intend to depose the President's former Chief of Staff, the President's daughter, his son-in-law, close advisers, and alleged co-conspirators. They do not disclaim those depositions, and identify no meaningful category of deposition discovery that would not implicate the President. Nor could they. Under Plaintiffs' own theories, testimony concerning the conduct, intent, communications, or liability of alleged co-conspirators would bear directly on their conspiracy, aiding-and-abetting, and vicarious-liability claims against the President. So when the district court erroneously

---

[1] Plaintiffs have taken only one deposition to probe document production. Nor can they rely on four prior depositions taken by the President's codefendants. *Contra* Caspar Decl. ¶ 4. Those were not Plaintiff-driven efforts to build an adverse record against the President.

2

allowed *Smith* discovery to proceed broadly, it did so over aspects of the case directly involved in the appeal.

The choice is therefore not between discovery against the President and discovery against others. It is between preserving the President's immunity pending appeal, or allowing Plaintiffs to litigate around that immunity through discovery designed to prove claims against him. The Court should stay *Smith* in full pending resolution of the consolidated interlocutory appeals.

## ARGUMENT

### I. The Stay Is Automatic, So the District Court Had No Discretion to Refuse It.

Plaintiffs fail at the threshold by misstating the question presented. The President does not contend that an immunity appeal by one defendant automatically freezes every proceeding in every multi-defendant case. The point is narrower: once the President appealed the denial of official-acts immunity, the district court lost jurisdiction to proceed with any part of the case that would develop the claims against him or impose the litigation burdens from which immunity protects him. That is the rule of *Griggs* and *Coinbase. See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *Coinbase, Inc. v. Bielski*,

3

599 U.S. 736, 740–44 (2023). Here, on *Plaintiffs' own pleadings,* any merits discovery in this President-centered conspiracy case bears on President Trump's (nonexistent) liability—because Plaintiffs seek to hold him vicariously liable for his codefendants' conduct.

Plaintiffs try to escape that conclusion by incorrectly rebranding the order below as an ordinary case-management decision that should be reviewed for abuse of discretion. Opp. 5–6. But whether the proceedings they seek to pursue are part of the case on appeal—and whether the district court was therefore divested of authority to allow them—is a legal question reviewed de novo. *See Meza v. Renaud*, 9 F.4th 930, 933 (D.C. Cir. 2021). The question is not whether the district court reasonably managed discovery, but whether it had jurisdiction to permit that discovery at all. *See Princz v. Federal Republic of Germany*, 998 F.2d 1 (D.C. Cir. 1993) (immunity appeal automatically effected a stay).

Plaintiffs' authorities are not to the contrary. *Lightfoot v. Walker*, 797 F.2d 505 (7th Cir. 1986), *John Doe Co. v. CFPB*, 849 F.3d 1129 (D.C. Cir. 2017), and *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C. Cir. 1977), all predated *Coinbase*, and addressed discretionary stays in ordinary appeals—not immunity

appeals that strip the district court of jurisdiction. The automatic stay rule would mean little if plaintiffs could avoid it by routing discovery through codefendants where, as here, that discovery develops the factual record needed to impose liability on the immune appellant. Allowing such an end around is error.

## II. Plaintiffs' Own Theories Make Codefendant Discovery Inseparable From the Claims Against the President.

Plaintiffs wrongly treat *Smith* like an ordinary multi-defendant case in which discovery against some defendants can be walled off from an appealing defendant. Opp. 1–2, 17–18. But Plaintiffs did not plead an ordinary multi-defendant case. They pleaded a President-centered conspiracy. In that kind of case, discovery into alleged co-conspirators' communications, intent, coordination, conduct, and state of mind is not collateral to the claims against President Trump; it is the factual predicate for those false claims.

Plaintiffs and the district court never confront what the *Smith* complaint actually alleges. Count I alleges a § 1985(1) conspiracy in which, "[r]esponding to [President] TRUMP's calls," other defendants "planned and coordinated" to attack the Capitol; "[e]ach Defendant agreed" to commit the predicate acts; and President Trump "agreed with"

virtually every named defendant and ten Doe defendants to violate the statute. *Smith* Am. Compl. ¶¶ 6, 168, 170(a). Under that erroneous, President-focused theory, proof about a co-conspirator's communications, actions, statements, intent, or coordination would establish the conspiracy and the liability of its alleged members, including President Trump.

In response, Plaintiffs claim that *Smith* also alleges separate agreements among some defendants that do not involve the President. Opp. 3, 17–18 (citing *Smith* Am. Compl. ¶ 170(b)-(i)). That does not withstand scrutiny. The immediately preceding paragraph pleads a unified, President-centered course of conduct. *Smith* Am. Compl. ¶ 170(a). It falsely alleges that the other defendants responded to President Trump's calls, coordinated with one another, and acted in furtherance of the same unlawful objective. *Id.* ¶¶ 6, 170(a). Evidence that any subset of defendants coordinated, mobilized, communicated, or acted with a particular intent bears directly on the claims against the President. Plaintiffs would try to rely on that evidence to attempt to establish the existence, scope, object, foreseeability, and consequences of the broader

6

conspiracy they attribute to him. Discovery into those alleged agreements thus remains integral to the case against the President.

The assault and battery claims make the point even clearer. Counts IV and V falsely allege that President Trump "aided and abetted" the assaults and batteries, that he is "vicariously liable" for his alleged agents' acts, and that "the attackers (including many Defendants) made clear that they were acting at [his] direction." *Id.* ¶¶ 142, 200–02, 206–08. Plaintiffs ignore this point for good reason: their aiding-and-abetting and vicarious-liability theories cannot be tested without developing the same facts they seek to use against the President. Discovery into what the defendants did, why they did it, what they understood, and whether they believed they were acting at the President's direction goes directly to Plaintiffs' false claims against him. That is especially true because Plaintiffs rely on a theory under which a tacit agreement suffices. *Smith v. Trump*, 2023 WL 417952, at *6 (D.D.C. Jan. 26, 2023).

That is exactly what *Coinbase* and *Iqbal* forbid. Plaintiffs improperly dismiss *Coinbase*'s discussion of merits discovery as "nonbinding dicta." Opp. 8. But this Court treats "carefully considered" Supreme Court dicta as authoritative. *United States v. Dorcely*, 454 F.3d

7

366, 375 (D.C. Cir. 2006). *Coinbase* expressly analogized the automatic stay rule to qualified immunity and double jeopardy, where the right at stake includes complete freedom from litigation burdens. 599 U.S. at 742 & n.4.

Plaintiffs likewise cannot avoid *Iqbal* by calling it a "pleading standards" case. Opp. 9. *Iqbal* rejected the very solution Plaintiffs and the district court propose: allowing discovery against others while expecting the immune defendant to participate enough in order to prevent the case from developing "in a misleading or slanted way." *Ashcroft v. Iqbal*, 556 U.S. 662, 685–86 (2009). A deposition-by-deposition protective-order regime does not preserve immunity—it defeats immunity.

Plaintiffs' cases fail to authorize a different result. *In re Flint Water Cases*, 960 F.3d 820, 826–29 (6th Cir. 2020), predated *Coinbase*, and permitted discovery only after the conspiracy count was dismissed. *Lugo v. Alvarado*, 819 F.2d 5, 6–7 (1st Cir. 1987), turned on the appealing defendant's own pursuit of discovery. *Alice L. v. Dusek*, 492 F.3d 563 (5th Cir. 2007), involved distinct claims and no conspiracy theory. Further, *Aska v. United States*, 2024 WL 6864047, at *2 (N.D. Ill. June 21, 2024),

8

supports the President because it recognized that proceedings may not continue where claims are "inextricably tied" to the appeal. That is this case.

### III.     Prior, Improperly Granted Discovery Does Not Defeat the President's Right to Avoid Further (and Heavier) Litigation Burdens.

Plaintiffs' principal, erroneous argument is that some discovery proceeded in *Smith* during the 3.5 years since it was filed. From that history, they draw two false conclusions: first, that codefendant discovery does not burden the President and is not intertwined with the claims against him; and second, that the President waived any objection by not contesting each discovery step or seeking deposition-by-deposition protective orders. Opp. 1–2, 11–15. Both assertions are wrong.

*First*, the core premise of Plaintiffs' argument is incorrect. They insist the President "has not . . . claimed discovery infringed on his 'interests' in immunity." Opp. 12. To the contrary, in 2022, President Trump moved to stay the "entire case" because "[a]ny discovery that begins as to any party in this case would undermine President Trump's absolute immunity." *Smith* ECF No. 154-1 at 4–5. He specifically

9

identified "objecting and examining deposition witnesses" as "the precise type of litigation burden specifically prohibited by immunity." *Id.* at 5.

*Second*, Plaintiffs' inference is especially backwards in the immunity context. They reason that because the President did not litigate every discovery dispute after losing his stay motion, discovery must not have burdened him. Opp. 10, 12. But immunity does not work that way. A party asserting immunity need not incur the very burdens immunity forbids to prove those burdens exist. The President's decision to stand aside was not a concession; it was the predictable response of a party asserting the right not to be drawn into discovery at all.

*Third*, Plaintiffs conflate limited document discovery with the broad deposition campaign now at issue. They repeatedly invoke "3.5 years," Opp. 1–2, 11–15, but most of that period involved document discovery, third-party subpoenas, written discovery, and collateral disputes—not depositions. After the United States' Westfall Act certification, the court stayed all depositions and further discovery against the Government, leaving only limited document discovery against non-Government defendants and outstanding subpoenas.

10

The discovery Plaintiffs now seek is vastly different in magnitude: roughly 100 depositions and up to 600 hours of live, adversarial testimony, including from the President's former Chief of Staff, as well as the President's family members, close advisers, and alleged co-conspirators. Stay Order at 10. The Government correctly described that scope as "staggering." Those depositions are not just collateral to the claims against the President. Under Plaintiffs' own conspiracy, aiding-and-abetting, and vicarious-liability theories, they go to the core of the misguided case against him. Unlike documents, which can be reviewed after the fact, depositions create a testimonial record that shapes the litigation going forward.

Plaintiffs call these concerns "hypothetical," Opp. 15–16, but their own conduct proves otherwise. They propose no workable line between permissible and President-focused discovery. The depositions that Plaintiffs have noticed are all about the President, and they do not represent that they will forgo them pending appeal. Opp. 16. The document discovery they have pursued since the stay was lifted is likewise targeted at the President. *Smith* ECF Nos. 502, 506. A full stay is the only answer to the conspiracy case Plaintiffs have pled.

11

Plaintiffs' waiver claims similarly fall flat. *Griggs* divestiture cannot be waived. *United States v. DeFries*, 129 F.3d 1293, 1302–03 (D.C. Cir. 1997); *United States v. Cotton*, 535 U.S. 625, 630 (2002); *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322, 326 (4th Cir. 2021). Furthermore, waiver at one stage (limited document discovery) does not carry over to the next (100 adverse depositions). *English v. Dyke*, 23 F.3d 1086, 1089–91 (6th Cir. 1994). In any event, there was no waiver because President Trump preserved his objection by moving to stay all discovery. *Smith* ECF 154-1 at 4–5. Once denied, he was not required to litigate every discovery skirmish to preserve the position that discovery should not proceed at all. Requiring that would force the President to incur the very burdens immunity protects against to preserve his objection to those burdens.

Plaintiffs therefore cannot convert limited discovery that proceeded over the President's objection into license for the far more intrusive discovery that they now seek. The roughly 100 depositions directed at the alleged conspiracy, aiding-and-abetting, and vicarious-liability theories asserted against the President—is precisely the merits discovery the immunity appeal suspends.

12

## IV.    The *Nken* Factors Favor A Discretionary Stay.

Plaintiffs' opposition confirms that the *Nken* factors—which this Circuit applies on a sliding scale—favor a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

President Trump is likely to succeed on his official-acts immunity appeal, which raises significant constitutional questions. The Supreme Court has recognized that "most of a President's public communications are likely to fall comfortably within the outer perimeter of his official responsibilities." *Trump v. United States*, 603 U.S. 593, 629 (2024). The district court erroneously failed to apply those presidential-immunity principles. Plaintiffs may believe they will somehow prevail, but they cannot plausibly deny the substantial threshold merits questions.

Irreparable harm is also clear. Official-acts immunity is an entitlement not to bear litigation burdens; once those burdens are imposed, the right is lost. The now-authorized merits depositions would require President Trump's counsel either to help shape the record or stand aside while Plaintiffs build a one-sided one. Both choices subject President Trump to irreparable harm.

The remaining factors also favor a stay. Plaintiffs identify delay and preservation concerns, but delay alone is not substantial harm, and merits depositions have been stayed since May 2025, so a continued stay preserves the status quo. Plaintiffs identify no witness whose testimony will be lost during these appeals, and no evidence that will disappear absent immediate merits depositions. The public interest favors resolving threshold immunity questions before discovery that may never lawfully occur, and efficiency favors preserving the status quo while this Court decides dispositive issues.

Plaintiffs' reliance on *Trump v. BBC*, No. 1:25-cv-25894 (S.D. Fla.), is misplaced. That case involved different claims, different parties, and no official-acts immunity. Pursuing discovery where no immunity is at stake says nothing about whether the public interest favors shielding the Presidency from intrusive discovery while threshold immunity questions are on appeal.

## CONCLUSION

For these reasons, the Court should grant President Trump's emergency motion, and stay *Smith* in full pending resolution of the

consolidated interlocutory appeals, or, at minimum, stay depositions and other merits-based discovery.

Dated: July 6, 2026                  Respectfully submitted,

Joshua Halpern
(Member application pending)
**JH Legal PLLC**
1100 H Street, NW, Suite 840
Washington, D.C. 20005
Telephone: (610) 405-5531
jhalpern@jhlegalpllc.com

/s/ Caryn G. Schechtman
Caryn G. Schechtman
Circuit Bar No. 67233
M. David Josefovits
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
Telephone: (212) 335-4500
Fax: (212) 335-4501
caryn.schechtman@us.dlapiper.com
david.josefovits@us.dlapiper.com

Aaron C. Ward
Circuit Bar No. 67170
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, D.C. 20004
Telephone: (202) 799-4000
Fax: (202) 799-5000
aaron.ward@us.dlapiper.com

15

Jonathan M. Shaw
Circuit Bar No. 56548
**Dhillon Law Group, Inc.**
2121 Eisenhower Ave, Suite 608
Alexandria, Virginia 22314
Telephone: (703) 574-1206
Fax: (415) 520-6593
jshaw@dhillonlaw.com

Jesse R. Binnall
Circuit Bar No. 62429
Gerald A. Urbanek, Jr.
(Member application pending)
**Binnall Law Group PLLC**
717 King Street, Suite 200
Alexandria, Virginia 22314
Telephone: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
gerald@binnall.com

*Counsel for Defendant-Appellant*
*President Donald J. Trump*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), undersigned counsel certifies that this document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) and Circuit Rule 27(a)(2) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), it contains 2,598 words. Undersigned counsel certifies that this document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century font.

/s/ *Caryn G. Schechtman*
Caryn G. Schechtman

*Counsel for Defendant-Appellant*
*President Donald J. Trump*

17

## CERTIFICATE OF SERVICE

I certify that on July 6, 2026, a copy of this document was filed

with the Clerk of the Court using the Court's CM/ECF system, which

will send a copy to all counsel of record.

/s/ *Caryn G. Schechtman*
Caryn G. Schechtman

*Counsel for Defendant-Appellant*
*President Donald J. Trump*